[Cite as *State v. Peak*, 2019-Ohio-2569.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107479 |
| v. | : | |
| JAMES A. PEAK, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 27, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-17-613638-A and CR-17-619586-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony Thomas Miranda, Assistant Prosecuting Attorney, *for appellee.*

The Law Offices of Eric L. Foster, Eric L. Foster, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant James Peak appeals from the trial court's judgment denying his motion to withdraw his guilty plea and the imposition of

consecutive sentences.  For the following reasons, we affirm the trial court's denial of the motion to withdraw Peak's guilty plea and affirm the consecutive sentences.

### Procedural History and Substantive Facts

{¶ 2}   In 2007, Peak pleaded guilty to two counts of sexual battery and one count of abduction in Cuyahoga C.P. No. CR-04-458380-A.  After accepting his guilty plea and finding Peak guilty, the court determined that Peak was a sexual predator, which subjected him to certain reporting requirements, and sentenced Peak to a total of two years' incarceration.[1]

{¶ 3}   In February 2017, Peak was charged with failure to provide notice of change of address in violation of R.C. 2950.05(E)(1), a felony of the third degree, as a result of his registration requirement from his conviction in 2007.  In July 2017, Peak was charged with "failure to verify address" in violation of R.C. 2950.06(F), a felony of the third degree, also alleging a registration requirement from his 2007 conviction.  Both indictments contained a furthermore specification that Peak had previously pleaded guilty to or been convicted of a similar crime in September 2014 (in Cuyahoga C.P. No. CR-14-584726-A).

{¶ 4}   In February 2018, the court held a plea hearing during which the state offered to amend the two charges to felonies of the fourth degree:  "attempted failure to provide notice of change of address" and "failure to verify address."  Following the

---

[1] Peak was sentenced under former R.C. Chapter 2950.01, et seq., codified under H.B. 180 and known as "Megan's Law."  *See State v. Peak*, 8th Dist. Cuyahoga No. 90255, ¶ 13.  Megan's Law required a sexual predator to register and verify his or her residential address every 90 days for life. Former R.C. 2950.07(B)(1) and 2950.06(B)(1).

hearing, Peak pleaded guilty to the amended indictments, and the court scheduled the matter for sentencing.

{¶ 5} In March 2018, the trial court held the sentencing hearing. Prior to sentencing, however, Peak requested to withdraw his guilty plea. After engaging in a dialogue with Peak and his counsel regarding Peak's oral request to withdraw his plea, the trial court denied the motion and imposed sentence. The court sentenced Peak to 18 months in prison on each count. The counts were to be served concurrently. After additional dialogue with Peak, the trial court ordered the sentence to be served consecutively and it made consecutive-sentence findings.

{¶ 6} Peak now appeals, assigning the following errors for our review:

I. The trial court erred by refusing to allow James Peak to withdraw his guilty plea prior to sentencing.

II. The trial court erred by imposing consecutive sentences where the record fails to support them.

## Motion to Withdraw Guilty Plea

{¶ 7} In his first assignment of error, Peak contends that the trial court erred when it denied his motion to withdraw his presentence guilty plea. In support, he argues that the trial court failed to provide a full hearing on his motion to withdraw and failed to give full and fair consideration to his request.

{¶ 8} Crim.R. 32.1 governs withdrawals of guilty pleas and provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or

her plea." Generally, a presentence motion to withdraw a guilty plea should be freely and liberally granted. *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). It is well established, however, that a "defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. Therefore, a trial court must conduct a hearing in order to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *Id.*

{¶ 9} The decision whether to grant or deny a motion to withdraw a guilty plea is entirely within the sound discretion of the trial court, and we will not alter the trial court's decision absent a showing of an abuse of that discretion. *Xie* at paragraph two of the syllabus; *State v. Peterseim*, 68 Ohio App.2d 211, 428 N.E.2d 863 (8th Dist.1980), paragraph two of the syllabus. "'[U]nless it is shown that the trial court acted unjustly or unfairly, there is no abuse of discretion.'" *Peterseim* at 213-214, quoting *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978).

{¶ 10} A trial court does not abuse its discretion in denying a motion to withdraw a guilty plea where the following occurs: (1) the accused is represented by competent counsel; (2) the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea; (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion; and (4) the record reflects that the court gave full and fair consideration to the plea-withdrawal request. *Peterseim* at paragraph three of the syllabus; *State v. King*, 8th Dist. Cuyahoga No. 106709, 2018-Ohio-4780, ¶ 13. Additional factors this court has considered include whether the motion was made in a reasonable time; whether the

motion states specific reasons for withdrawal; whether the accused understood the nature of the charges and the possible penalties; and whether the accused was perhaps not guilty or had a complete defense. *King* at ¶ 14, citing *State v. Benson*, 8th Dist. Cuyahoga No. 83178, 2004-Ohio-1677, ¶ 8-9.

{¶ 11} Here, Peak concedes that he was represented by competent counsel. He also concedes that he was afforded a full Crim.R. 11 hearing. Indeed, the record reflects that the court engaged in a full Crim.R. 11 plea colloquy before Peak entered his plea. During the plea hearing, the court advised Peak of the effect of his plea, the nature of the charges, the potential penalties he faced, and the constitutional rights he was waiving by pleading guilty. Peak repeatedly indicated that he understood the court's advisements and he was in fact guilty. Additionally, Peak confirmed that no threats or promises were made in exchange for his guilty plea, and at no time did Peak express confusion during the hearing or that he misunderstood the court's advisements. A trial court's adherence to Crim.R. 11 raises a presumption that a plea is voluntarily entered. *State v. McKissick*, 8th Dist. Cuyahoga No. 105607, 2018-Ohio-282, ¶ 23.

{¶ 12} Peak contends, however, that the trial court failed to provide him a complete hearing on his motion to withdraw and failed to fully consider his request. Specifically, Peak argues that the court routinely interrupted him and did not consider his claim of innocence. He also argues that rather than addressing his concerns, the court "continued to defend its compliance with Crim.R. 11."

{¶ 13} The scope of a hearing on a motion to withdraw should reflect the substantive merits of the motion. *State v. Robinson*, 8th Dist. Cuyahoga No. 89651, 2008-Ohio-4866, ¶ 25, 26. "'[B]old assertions without evidentiary support simply should not merit the type of scrutiny that substantiated allegations would merit.'" *Id.*, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 61464, 1992 Ohio App. LEXIS 6259, 14 (Dec. 10, 1992). Therefore, where a defendant fails to make a prima facie showing of merit, the trial court need not "devote considerable time to" his or her request to withdraw. *Smith* at 14. Further, the scope of the hearing is within the sound discretion of the trial court, subject to this court's review for an abuse of discretion. *State v. Farkosh*, 8th Dist. Cuyahoga No. 102393, 2015-Ohio-3588, ¶ 9, citing *Xie*, 62 Ohio St.3d at 526, 584 N.E.2d 715 (1992). "This approach strikes a fair balance between fairness for an accused and preservation of judicial resources." *Smith* at 15.

{¶ 14} Importantly, where an individual claims he or she is innocent, "'the trial judge must determine whether the claim is anything more than the defendant's change of heart about the plea agreement.'" *State v. Minifee*, 8th Dist. Cuyahoga No. 99202, 2013-Ohio-3146, ¶ 27, quoting *State v. Kramer*, 7th Dist. Mahoning No. 01-CA-107, 2002-Ohio-4176, ¶ 58. And this court has repeatedly held that a change of heart regarding a guilty plea and the possible sentence is insufficient justification for withdrawal of a guilty plea. *State v. Norman*, 8th Dist. Cuyahoga No. 105218, 2018-Ohio-2929, ¶ 20; *McKissick*, 8th Dist. Cuyahoga No. 105607, 2018-Ohio-282,

at ¶ 22; *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, ¶ 7; *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991).

{¶ 15} Similarly, an individual's claim of innocence is insufficient grounds for vacating a plea that was voluntarily, knowingly, and intelligently entered. *Norman*; *McKissick*; *State v. Bloom*, 8th Dist. Cuyahoga No. 97535, 2012-Ohio-3805, ¶ 13; *State v. Abdelhag*, 8th Dist. Cuyahoga No. 71136, 1997 Ohio App. LEXIS 3394, 11 (July 31, 1997). "By inference, all defendants who request a withdrawal of their guilty plea do so based upon some claim of innocence." *Abdelhag* at 11.

{¶ 16} Here, at the onset of the sentencing hearing, Peak requested a moment to speak to his attorney. Shortly thereafter, through counsel, Peak requested to withdraw his guilty plea. Defense counsel informed the court that Peak "is claiming that he didn't understand the penalties for this particular charge as well as the fact that he would be found guilty and may be sentenced with an F-4." Counsel further stated that Peak "believes he is innocent and does not wish to enter a guilty plea."

{¶ 17} The record reflects that in response to Peak's oral motion to withdraw his plea, the court engaged in a fairly extensive dialogue with Peak, where, contrary to the defendant's contention of continued interruptions, the court purportedly interrupted Peak only twice, thus allowing him to explain his present position. During the exchange, the court reminded Peak that it reviewed with him his rights and penalties before accepting his guilty plea, and the court then permitted Peak to explain his reasons for wishing to withdraw. Peak replied that he had been "copping

out" on the failures to register, and he told the court that "there is nowhere for me to go out there in society * * * I'm trying to make an effort to go forward in life and here it is —."

{¶ 18} At this point, the court advised Peak that "that doesn't have anything to do with you pleading guilty" and it reminded Peak that he has eight prior convictions for failing to register and the court reviewed with him the constitutional and trial rights he was waiving. Thereafter, Peak stated that he "didn't even know it was that many and that's my point." The court then stated once again that at the time of the plea, Peak indicated that he understood his rights and he did not indicate that he was confused:

> You understood it when I reviewed with you your constitutional rights. You understood. You never said to me that you didn't understand. You never said to me you were confused. You never stated that you had a question. I asked you do you understand and you said yes.
>
> * * *
>
> You never expressed one time not even minutely that you didn't understand. You said to me I understand what you said.

{¶ 19} In response, Peak conceded that he did in fact understand his rights as advised in the plea hearing. He then stated, "So I mean I'm not disputing that when I copped out about the laws, okay? I'm just saying that I had a change of heart."

{¶ 20} Peak then explained to the court that "maybe if I go to trial, * * * then there would maybe be a difference * * * of me being possibly innocent." The court reminded Peak that he already said he was *not* innocent, and Peak conceded this

fact. At this point, defense counsel proceeded to explain the "facts of the case," stating that "[a]t the time * * * [Peak] was staying for a period of time at Lakeside homeless shelter until he was kicked out of that particular location." Peak stated that he tried to return to the shelter but "they wouldn't take me * * * because of the sex offense." The court noted that he was not kicked out of the shelter because of his prior sex offense, as evidenced by the shelter accepting him in the first instance. Defense counsel explained that "there was an argument." The court then denied Peak's motion.

{¶ 21} On this record, we find that the trial court gave Peak's motion the consideration it merited. The trial court gave Peak an opportunity to elaborate on the basis for his motion. Peak's motion, however, was based upon unsupported claims of innocence, where Peak in fact acknowledged that he had a change of heart. Moreover, Peak conceded on appeal that the court engaged in a full Crim.R. 11 hearing. Additionally, he acknowledged at the hearing on his motion to withdraw that he understood the court's advisements made at the plea hearing and he did in fact inform the court during the plea hearing that he was guilty of the offenses with which he was charged. The trial court, therefore, did not abuse its discretion in denying Peak's motion to withdraw his guilty plea.

{¶ 22} Peak's first assignment of error is overruled.

## Consecutive Sentences

{¶ 23} In Peak's second assignment of error, he challenges the imposition of consecutive sentences, arguing that the record does not support consecutive sentences.

## Standard of Review

{¶ 24} In reviewing felony sentences, we apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Wright*, 8th Dist. Cuyahoga No. 106175, 2018-Ohio-965, ¶ 9; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or otherwise modify a sentence, or vacate a sentence and remand for resentencing, if it "clearly and convincingly finds" that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or the sentence is contrary to law. A sentence is "contrary to law" if (1) the sentence falls outside the statutory range for the particular degree of offense, or (2) the trial court failed to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Morgan*, 8th Dist. Cuyahoga No. 105682, 2018-Ohio-1834, ¶ 14; *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58.

{¶ 25} The appellate review of consecutive sentences set forth in R.C. 2953.08(G)(2) is an "extremely deferential" standard of review. *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453 ¶ 21 (8th Dist.). An "'appellate court's standard for review is not whether the sentencing court abused its discretion.' As a practical

consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge." *Id.* at ¶ 20, quoting R.C. 2953.08(G)(2). Thus, the court of appeals "must clearly and convincingly find that the record does not support the court's findings." *Id.* at ¶ 21.

{¶ 26} When examining whether the "record" supports the trial court's finding, R.C. 2953.08(G)(2) is broadly worded to "encompass all of the proceedings before the court, not just the sentencing" and support for consecutive findings "may appear anywhere in the 'record' and not just at the time the court imposes consecutive sentences." *Id.* at ¶ 22.

{¶ 27} R.C. 2929.14(C)(4) provides that the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and that one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 28} Compliance with R.C. 2929.14(C)(4) requires the trial court to make the statutory findings prior to imposing consecutive sentences, meaning that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). However, a trial court is not required "to give reasons supporting its decision to impose consecutive sentences." *Id.* at ¶ 27. In fact, a trial court is not required to give a verbatim recitation of the language of R.C. 2929.14(C), provided that "the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings." *Id.* at ¶ 29; *State v. Wilson*, 8th Dist. Cuyahoga No. 107313, 2019-Ohio-1245, ¶ 17.

{¶ 29} Here, the trial court sentenced Peak to 18 months in prison on each count. After advising Peak of his sentence, the court informed Peak of the possibility of postrelease control and the consequences of violating community control sanctions. When the court asked Peak if he understood, Peak, stated, "I'm so tired of this, man." The court inquired again if Peak understood, to which he replied again, "I'm so tired of this, man." At this point, the following exchange occurred:

Court: Do you understand what I just read to you?

Peak: I am tired.

Court: Okay. That's good. Maybe you won't commit no more crimes, but do you understand that?

Peak: What crime am I committing? What crime am I committing?

Court:  Do you understand that?

Peak:  I go to church out there and everything.

Court  [presumably to the deputies]:  Take him back.

Peak:  What crime am I committing?

Court:  Go.

Peak:  No.  I'm being convicted over and over again for being a sex offender.

Court:  Um-hum.

Peak:  Um-hum.  What do you mean?  What crime have I committed?

{¶ 30} The court then ordered Peak's sentence to be imposed consecutively and had him brought back before the court stating, "Make his sentence consecutive." At this point, the trial court made consecutive sentence findings, including that consecutive sentences are necessary to punish the offender, they are not disproportionate to the danger the offenses pose to the public, and Peak's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.  When the court had finished, Peak asked, "Does that make you proud?"  The court responded with "Good-bye" and "Um-hum."

{¶ 31} Peak argues that the court's imposition of consecutive sentences was a "penalty" for expressing his frustration when he questioned the trial court's sentence.  He also argues that the record, including his conduct after imposition of the initial sentence, does not support consecutive sentences.

{¶ 32} The state contends, however, that the trial court was within its discretion to impose consecutive sentences.  In support, the state asserts that the underlying convictions are Peak's seventh and eighth time committing this same

kind of offense and, based upon Peak's lengthy history of recidivism, the trial court reasonably concluded that consecutive sentences were necessary to protect the public from future crime and they were not disproportionate to the seriousness of the offense and the danger Peak poses to the public. Additionally, the state argues that the trial court could have reasonably determined that Peak's "disrespectful" conduct after the court's initial imposition of sentence demonstrated lack of genuine remorse, which is a sentencing factor under R.C. 2929.12. Finally, the state contends that the trial court's modification of its original sentence was proper because the concurrent sentence had not yet been journalized.

{¶ 33} It is well-settled that a trial court cannot reconsider its own final determinations. *State v. Wright*, 8th Dist. Cuyahoga No. 107213, 2019-Ohio-1361, ¶ 16, citing *State v. Wilson*, 8th Dist. Cuyahoga No. 105535, 2017-Ohio-8068, ¶ 24, citing *State v. Carlisle*, 131 Ohio St.3d 127, 2011-Ohio-6553, 961 N.E.2d 671. In a criminal case, a sentence is final upon issuance of a final order. *Carlisle* at ¶ 11. And a journal entry is a final order of sentence where the judgment entry of conviction includes "'(1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk.'" *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 14; Crim.R. 32. Therefore, if a sentence has not been journalized, a trial court may modify an orally pronounced sentence. *State v. Wright* at ¶ 16; *State v. Mathis*, 8th Dist. Cuyahoga No. 100342, 2014-Ohio-1841 (increased penalty after outburst with court during sentencing); *Brook Park v. Necak*, 30 Ohio App.3d 118, 119, 506 N.E.2d 936 (8th

Dist.1986), citing *Columbus v. Messer*, 7 Ohio App.3d 266, 455 N.E.2d 519 (10th Dist. 1982) ("The courts can increase sentences when they do not purport to be final."); *see also Beatty v. Alston*, 43 Ohio St.2d 126, 330 N.E.2d 921 (1975) (trial court could increase sentence). "Ordinarily, appellate courts defer to trial courts' broad discretion in making sentencing decisions." *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.2d 431, ¶ 10, citing *Wasman v. United States*, 468 U.S. 559, 563-564, 104 S. Ct. 3217, 82 L.Ed.2d 424 (1984). The issue on appeal is whether the record does not "clearly and convincingly" support the court's findings pursuant to R.C. 2929.14(C).

{¶ 34} Here, the trial court appears to initially impose two 18-month prison terms concurrently, and after Peak's additional comments, it ordered the sentences to be served consecutively. As previously noted, when imposing a consecutive sentence, trial courts must make the statutorily mandated findings. R.C. 2929.14(C)(4); *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 26. And "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

{¶ 35} Peak does not argue that the trial court failed to make the R.C. 2929.14(C) findings. Indeed, the record reflects that the court stated that "consecutive sentences are necessary to punish the offender * * * [, they] are not disproportionate to the danger the offenses pose to the public, [and] the offender's

history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 36} Peak argues, however, that the record does not clearly and convincingly support the trial court's imposition of consecutive sentences. We do not agree.

{¶ 37} The trial court did not state reasons to support the court's decision to impose consecutive sentences, nor is the court required to per *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659. However, after a complete review of the record, we cannot "clearly and convincingly" find that the record does not support consecutive-sentence findings. Peak has a history of criminal conduct. He is a sexual predator required to comply with Ohio statutory reporting requirements. The presentence investigation report ("PSI") revealed convictions for sexual battery and abduction, child endangering, grand theft of a motor vehicle, domestic violence, and failing to comply with the sexual-predatory-reporting requirements on at least six prior occasions. His history of criminal conduct combined with his conduct toward the court at the sentencing hearing arguably support the court findings that consecutive sentences are necessary to punish the offender, the consecutive 18-month sentences are not disproportionate to the danger the offender poses to the public, and are necessary to protect the public from future crime. The trial court did not provide reasons for her initial sentence implying concurrent sentences, and we cannot speculate whether the court was initially inclined to issue a more lenient sentence and changed her mind. However, the law is well settled that a criminal

sentence is not final until it is journalized. Until then, it is within a trial court's discretion to modify consecutive-sentence findings supported by the record.

{¶ 38} In light of the above, we clearly and convincingly find that the record supports the sentencing court's findings under R.C. 2929.14(C)(4). We, therefore, affirm Peak's consecutive sentences.

{¶ 39} Peak's second assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J., and
RAYMOND C. HEADEN, J., CONCUR